ESTATE OF Estelle E. GERMAN

v.

The UNITED STATES.

No. 734–81T.

United States Claims Court.

March 26, 1985.

Kenneth J. Ingram, Washington, D.C., attorney of record, for plaintiff.  Sachs,

_____

Greenebaum & Tayler, Washington, D.C., of counsel.

Kevin B. Shea, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser and Donald H. Olson, Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is a suit for refund of estate taxes. Internal Revenue Code § 2036 includes in the gross estate the value of any interest in property of which a decedent has at any time made a transfer under which he has retained for his life the possession or enjoyment of, or the right to income from, the property, or the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. Section 2038 includes in the gross estate the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power by the decedent alone or by the decedent in conjunction with any other person, to alter, amend, revoke, or terminate. The question presented is whether the decedent divested herself of her interest in property in 1969 when she transferred such property to a trust with a proviso that the trustees might, in their absolute discretion, pay any or all of the income or principal to decedent at any time during her lifetime, if they received the written consent of the person who was entitled to receive the principal and accumulated income of the trust after her death, or, whether she continued to enjoy the right to the income or principal of the trust up to the date of her death, because under Maryland law if she chose to incur any debts her creditors could still attach or levy upon the trust assets to collect them.

## Statement

On July 31, 1969, Estelle E. German (decedent) made six separate transfers of property to Frederick A. German and Arthur W. German, her sons, as trustees jointly. Each trust agreement provided that the trustees shall accumulate the net income of the trust, and that at the end of each year should add the accumulated net income to the principal of the trust. Three of the trusts were for the benefit of Frederick German and three for the benefit of Arthur German. Each trust provided that after decedent's death the trustees, in their sole and absolute discretion, were to accumulate for, pay to or apply for the benefit of the respective beneficiary all or part of the net income and principal of the trust, and, upon the death of the beneficiary, to such members of Frederick's or Arthur's family as each should appoint. Notwithstanding the foregoing, during the grantor's life the trustees had the power at anytime in their absolute and uncontrolled discretion to pay to or apply for the benefit of the grantor all or part of the net income and principal as the trustees should determine, in their absolute and uncontrolled discretion, for any reason whatsoever, including the termination of the trust, subject only to the condition that the trustees receive the written consent thereto of the respective beneficiary of the particular trust, Frederick or Arthur, individually.[1]

The decedent filed a gift tax return for 1969 which reflected that she had made no taxable gift during that year. She died on November 21, 1970. Her estate tax return, filed August 11, 1972, likewise failed to include in the estate the value of the assets transferred in 1969 to the six trusts.

Subsequently, there was assessed against the estate a $355,959 deficiency in federal estate tax, plus interest thereon,

---

1. The trustees were also required to obtain the written consent of a trust committee, comprised of individuals who were not beneficiaries of the trusts, before any distribution of trust assets or income could be made.

which amounts were paid on various dates in 1973 and 1974.

A timely claim for refund was filed on December 17, 1975, which was denied on December 28, 1979, and this suit was timely filed on December 28, 1981.

### Decision

**1. *On liability for estate tax.***

██ The government's theory is based upon the rationale of *Outwin v. Commissioner,* 76 T.C. 153 (1981) (acq., 1981–2 C.B. 2), a gift tax case. There the taxpayer had created four irrevocable trusts, which were to accumulate the income during his lifetime. After his death, if his wife survived him she was entitled to mandatory distributions of the trust income annually, and to distribution of the corpus to her only in the absolute and uncontrolled discretion of the trustee. In addition, she was given a special testamentary power of appointment over the corpus. Notwithstanding the foregoing, the trustees were given the power at any time during the life of the grantor, to pay to, or apply for the benefit of, the grantor, such part or parts of the income and principal as the trustees should determine in their absolute and uncontrolled discretion, for any reason whatsoever, notwithstanding that such payments might result in the termination of the trust; but such distributions by the trustees required the prior written consent of the grantor's spouse.

The Commissioner determined that in transferring property to such trusts Mr. Outwin had made a completed taxable gift, while the taxpayer contended to the contrary. The Tax Court overruled the Commissioner on the ground that the gift was not completed because the donor retained dominion and control over the property transferred. The court stated that "[w]here the trust agreement specifies * * that distributions to the settlor are to be made in the absolute discretion of the trustees, with no enforceable standard provided, the transfer is generally held to be complete for tax purposes." *Id.* at 162. However, "[a] different result obtains * *

where state law permits creditors of the settlor-beneficiary to pierce the trusts for satisfaction of claims." *Id.* This result follows, the court said, from the fact that if under state law the creditors of a settlor-beneficiary of a discretionary trust may reach for satisfaction of claims the maximum amount which the trustee may pay to the settlor or apply for her benefit, the taxpayer may at any time "obtain the economic benefit of the trust income simply by borrowing and then forcing [his] creditors to look to [his] interest in the trust income for a source of repayment." *Id.* Because it found that the settlor-beneficiary's creditors did have such a right under Massachusetts law, which was applicable to the *Outwin* trust, the court held that the gift was incomplete to the extent of the value of the settlor-beneficiary's life estate. *Accord Commissioner v. Vander Weele,* 254 F.2d 895 (6th Cir.1958) (applying Michigan law); *Paolozzi v. Commissioner,* 23 T.C. 182 (1954) (also applying Massachusetts law); and Rev.Rul. 76–103, 1976–1 C.B. 293. *But see Herzog v. Commissioner,* 116 F.2d 591 (2d Cir.1941), and *In Re Uhl's Estate,* 241 F.2d 867 (7th Cir.1957), reaching contrary results under New York and Indiana law, respectively.

Defendant claims that under Maryland law, which is applicable to the trusts herein, decedent's creditors could have reached the principal and interest of such trusts until the time of her death, and, accordingly, she had not disposed of her right to possession and enjoyment of the property and the transfer took effect upon her death. On the other hand, plaintiff maintains that Maryland law did not give decedent's creditors such right, and, accordingly, her gifts were completed at the time she transferred the assets in trust and they were no longer subject to estate tax. Thus, the narrow issue to be decided herein is as to the extent of decedent's creditors' rights with respect to the trust income and assets under Maryland law.

The authority upon which defendant relies primarily for Maryland law is the decision in *Warner v. Rice,* 66 Md. 436, 8 A. 84

(1887). That case presented the question as to whether or not the income of a debtor, from certain property embraced in a deed of trust made by himself and his wife prior to incurring the debts, was liable to attachment or execution in a suit for his debts. The deed was made "[i]n trust for the use and benefit of said George Warner and his immediate family, free from liability for any of his debts, contracts, or engagement; and when, if so by said trustees found requisite, by him being proper, to apply the uses, rents, income, and profits to the support and maintenance of said George and his said family during his, said George's, life, and, after his decease, the same to go as he by last will may have directed, or, in case of his decease intestate, the same to go according to law under the existing statutory provisions of the law of Maryland." *Id.* 8 A. at 85. The court held that Mr. Warner's creditors could reach the income of this trust because "a beneficial legal estate, in fee or for life, cannot be conveyed or devised to a person with a provision that it shall not be alienated, or that it shall not be subject to the debts of the legal owner" (*id.*); that "equitable estates cannot be effectually created with a proviso against alienation, or that they shall not be liable to the debts of the *cestui que trust* * * * and, generally, whenever property is subject to alienation by the owner it is subject to his debts" (*id.* at 85–86); and because, in this case—

> The object of the deed of trust was not to destroy or divest himself of his right of property, but simply to place a legal estate therein in a trustee, as, perhaps, a guard against improvident management. But the equitable estate remains in George Warner during his life, with full power of disposition by will, and, in default of will, the property devolves on his heirs and representatives at his death, when the trust will terminate. It is only during his life that the rents, profits, and income from the property are directed to be applied to the support of himself and his family, when and as the trustee may deem proper. Full and complete control is retained in the *cestuis que trust* over

the investments, and change of investments; and they declare, moreover, that they are entitled and reserve the right to collect, receive, and have, each for her or himself, the rents, issues, and profits of his or her share, conformably with the trust declared. As we have seen, there is no limitation over or cesser of George Warner's equitable life-estate, or his interest in the rents and profits of the property, upon seizure of the same by his creditors. (*Id.* at 86.)

In response to the argument by Warner that the trustee had discretion as to whether or not he would pay over the rents and profits to Warner, the court noted that if the trustee did not pay them over, he had no authority to accumulate them for any other purpose; they would still belong to the estate of George Warner and the trustee would have to account to his executor or administrator for such arrearage. *Id.* Accordingly, "[t]he discretion given the trustee, if the terms of the direction can be construed into a power to exercise a discretion at all, can only apply to the manner of the application, and not to any power to withhold or divert the rents and profits, and apply them to any other purpose." *Id.*

The instant case is distinguishable from *Warner* in several respects: First, if the trustee here, in the exercise of his discretion, did not distribute the income or principal to Mrs. German, it would go to the specified remaindermen; whereas in *Warner* the undistributed trust income would be accumulated for the settlor's benefit and the corpus distributed pursuant to his will. Second, unlike *Warner*, before the settlor here could receive any distribution from the trustees, the consent of a beneficiary having an adverse interest had to be obtained. Third, the trusts here, but not in *Warner*, made dispositions of the property upon the death of the settlor and were not intended solely to shield her assets from her creditors.

In *Mercantile Trust Co. v. Bergdorf Goodman & Co.* 167 Md. 158, 173 A. 31 (1934), the Maryland Court of Appeals confirmed that where there is no proof of

fraud the rights of attaching creditors to property in a trust created by a debtor depend upon whether the property which is not distributed to the settlor-beneficiary or according to his direction goes back to the settlor or to a third-party at his death. There the settlor had created an inter vivos trust, retaining a life estate in the trust assets and a power of appointment by will, which, if not exercised, would result in the property going to her then living issue or next of kin. The Maryland court held that although the creditors could attach the settlor's income from the life estate, in the absence of a fraudulent conveyance they could not reach the corpus of the trust, because, "there was an immediate vesting of the remainder in the next of kin of the settlor", and "[w]ith the ownership of the corpus in the remaindermen, even though the possession may be delayed or defeated by the will of the donor, * * * the corpus cannot be attached to satisfy the creditors of the settlor." (*Id.* at 165–66, 173 A. at 34–35.) *Accord, United States v. Baldwin,* 283 Md. 586, 391 A.2d 844 (1978). If the unexercised right of the settlor in *Mercantile Trust Co.* and *Baldwin* to dispose of the corpus by will was not sufficient to render the trust property subject to execution by creditors because of the interests of the remaindermen in such property in default of appointment, for the same reason it would appear that the unexercised discretion of the trustees of Mrs. German's trust with respect to both principal and income would not render either vulnerable to Mrs. German's creditors under Maryland law.

Apart from *Warner v. Rice,* defendant has not cited any Maryland decision in which creditors were able to reach income or corpus which could be distributed to the settlor of a trust, not as a matter of right, but in the uncontrolled discretion of the trustee.

Equally important, defendant has cited no decision, either in the Maryland courts or elsewhere, where the creditor was held entitled to attach trust property where the trustee's discretion could only be exercised with the prior consent of those who would receive the property in default of such exercise. In *Outwin,* the Tax Court likewise confessed that it had been unable to find any authorities in any state which addressed the precise issue. *Outwin,* 76 T.C. at 165. However, it resolved that problem by reasoning that in view of the strong public policy of the Massachusetts courts against persons placing property in trust for their own benefit while at the same time insulating such property from the claims of creditors the veto power of a spouse would not be a barrier to such creditors under Massachusetts law, because it assumed (1) that (in the absence of divorce) the possibility that the spouse would veto a disbursement by the trustee to her husband was remote, and (2) the fact that the husband might reciprocate by veto of disbursements to the wife under her similar trust would tend to further discourage her veto. *Id.* at 166–67. This court finds no such strong public policy in the Maryland courts where there is a remainder interest. It finds no assumption by the Maryland courts that the wife may be deemed merely the husband's alter ego for purposes of insulating property from a settlor's creditors in a non-fraudulent conveyance transaction. Indeed, *Watterson v. Edgerly,* 40 Md.App. 230, 388 A.2d 934 (1978), appears to be to the contrary. And the instant case does not involve reciprocal husband and wife trusts.

Thus, defendant has not established that under Maryland law creditors of the settlor could have reached the trust income or principal of her discretionary trusts up to the time of her death.

The most satisfactory resolution of this question of state law would have been by certification to the Maryland Court of Appeals. *See United States v. Baldwin,* 283 Md. 586, 391 A.2d 844 (1978). Unfortunately, while the Uniform Certification of Questions of Law Act, Md. [Courts and Judicial Proceedings] Code Ann. §§ 12–601—12–609 (1984), grants jurisdiction to the Maryland Court of Appeals to answer questions of law certified to it by a United States District Court or United States Court of Appeals, it does not allow certification from

this court. Accordingly, it is the duty of this court to approximate the law of the state from decisions of its highest court as best it can. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

### 2. *On Equitable Estoppel.*

As noted previously, Estelle E. German made the transfers in trust on July 31, 1969, but in a gift tax return for that year asserted that they were not taxable because they did not constitute completed gifts. On November 21, 1970, decedent died. However, the estate tax return filed by her estate likewise failed to include any amount for the 1969 transfers to the trusts, stating merely that decedent had made six irrevocable transfers in 1969 which had been excluded from the gross estate.

Defendant now asserts, on the basis of an affidavit from an estate and gift tax examiner that the examiner, upon audit of both returns, had discussions with plaintiff's representative; that the latter acknowledged that the value of the 1969 transfers was includable in either the gift or the estate tax return; and that he then offered to include the trust property in the gross estate for estate tax purposes if the examiner would treat the transfers as incomplete for gift tax purposes. According to the examiner, he accepted the offer, and in reliance thereon the Commissioner of Internal Revenue assessed plaintiff $355,-959 in estate tax but nothing in gift tax. Nevertheless, less than 6 months after the period of limitations on assessing the gift tax expired, plaintiff filed a claim for refund of the estate tax paid pursuant to the assessment, and upon its denial filed this suit.

The affidavit of plaintiff's representative denies the examiner's allegations.

Plaintiff now concedes that the gift tax was properly due and that defendant is entitled to offset the estate tax overpayment by the gift tax deficiency. However, such concession does not satisfy defendant. It asserts that the applicable estate tax is $66,000 more than the gift tax on the same transfers, and that, even if this court finds that only the gift tax was due, plaintiff is equitably estopped by the conduct of its representative from recovering any of the estate tax.

It is unnecessary to decide the disputed allegations, because, even if defendant's affiant's statements are true, defendant's claim for additional tax cannot be supported on the theory of equitable estoppel.

■ Equitable estoppel is ordinarily invoked when because of representations by the taxpayer, relied on by the government, the latter allows the period of limitations on assessment of a tax properly due to pass without a statutory notice of deficiency. But it is an equitable doctrine and requires misrepresentations of fact, reliance thereon, and detriment to the government which cannot otherwise be corrected. *Glazer Steel Corp. v. United States*, 181 Ct.Cl. 1063, 1077, 388 F.2d 990, 998 (1967); *Crosley Corp. v. United States*, 229 F.2d 376, 381 (6th Cir.1956); *Commissioner v. Mellon*, 184 F.2d 157, 160 (3d Cir.1950); *Ross v. Commissioner*, 169 F.2d 483, 496 (1st Cir.1948); and *see also Hess v. United States*, 210 Ct.Cl. 483, 495, 537 F.2d 457, 463 (1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *Oak Woods Cemetery Association v. United States*, 345 F.2d 361, 363 (7th Cir.1965); *Ford v. United States*, 149 Ct.Cl. 558, 566, 276 F.2d 17, 21 (1960).

■ None of these prerequisites may be found here. There is no allegation of misrepresentation as to the pertinent facts, as the only substantive dispute between the parties is as to the state law. There is no valid reason why defendant should have relied upon plaintiff's allegations as to state law, as it is equally accessible to both parties. Defendant has incurred no substantial detriment, as plaintiff concedes that defendant is entitled to an offset for gift tax which was properly due.

■ As the phrase implies, equitable estoppel may be applied only to correct an inequity. *Ross*, 169 F.2d at 494. It has

already been determined herein that the estate tax is not applicable, and accordingly the applicable tax is the lesser gift tax. There is no equity in defendant's claim that equitable estoppel militates in favor of collecting more than was originally due absent the bar of the statute of limitations. As noted by the Supreme Court in *Dickerson v. Colgrove*, 100 U.S. 578, 580–81, 25 L.Ed. 618 (1879), equitable estoppel "is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit."

## Conclusion

Defendant's motion for summary judgment is denied. Service of defendant's pretrial submission is now due on April 25, 1985.