Sidney J. HESS, Jr., et al.

v.

The UNITED STATES.

No. 471–73.

United States Court of Claims.

July 9, 1976.

---

458

Sidney J. Hess, Jr., Chicago, Ill, attorney of record, for plaintiffs.

Patricia B. Tucker, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant; Theodore D. Peyser and John E. Evans, Washington, D. C., of counsel.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTIONS FOR LEAVE TO AMEND ITS ANSWER AND FOR SUMMARY JUDGMENT

NICHOLS, Judge:

This case involves the gains on the redemption of 10,650 shares of International Nikoh Corporation (formerly known as International Rolling Mills Products Corporation and hereinafter referred to as Nikoh) in 1965. The issue is whether the bases on which the gains are computed are the amounts used in the estate tax valuation of two estates through which the stock passed to the taxpayers, or the then fair market values to be newly determined without regard to such amounts. We hold the former in the circumstances of this case.

Plaintiffs are Sidney J. Hess, Jr., William J. Friedman and American National Bank and Trust Co. of Chicago (American National Bank), as successor co-trustees of the Residue Trust for John Jacob Ets Hokin (hereinafter referred to respectively as Residue Trustees for John and Residue Trust for John) and Sidney J. Hess, Jr., and American National Bank as successor co-trustees of the Residue Trust for Lynda Sue Ets Hokin McCracken, John Jacob Ets Hokin, and Lynda Sue Ets Hokin McCracken. Plaintiffs are seeking a refund of federal income taxes paid by (1) the estate of Barney Ets Hokin for the fiscal year ending May 31, 1965 in the amount of $483,794.70; (2) the International Trust for John for the year 1965 in the amount of $86,886.25; and (3) the International Trust for Lynda for the year 1965 in the amount of $57,990.07, plus statutory interest on each amount. We have jurisdiction pursuant to 28 U.S.C. § 1491.

### I

Nikoh manufactured mechanical tubing and electrical mechanical tubing for sale to electrical contractors and manufacturers of such products as bicycles and steel furniture. Nikoh was also involved in steel warehousing.

The Nikoh stock in issue was redeemed from the estate of Barney Ets Hokin and from a certain testamentary trust created by the will of Loraine Ets Hokin.

Loraine Ets Hokin died testate on September 6, 1955. Pursuant to her will, 3470 shares of her Nikoh stock were to be held in a trust referred to as the International Trust for the benefit of her then minor grandchildren, John and Lynda Ets Hokin. The trust was to terminate on December 31, 1970 at which time 60 percent of the assets were to be distributed to John and 40 percent to Lynda. A federal estate tax return was filed on December 18, 1956, valuing the Nikoh stock at $128.81 per share. The Internal Revenue Service (IRS) conducted an audit and as a result thereof, the value of the stock was raised to $200 per share. The estate paid the deficiency and the stock became the corpus of the International Trust for John and Lynda Ets Hokin.

Barney Hokin died testate on June 28, 1962, owning 7,180 shares of Nikoh stock. On the federal income tax return filed on behalf of the estate on September 27, 1963, the Nikoh stock was valued at $98 per share. On the federal estate tax return, the Nikoh stock was valued, as of the Alternate Valuation Date, at $98 per share.

After the death of Barney Hokin, his son, Edwin Hokin, the father of Lynda and John Hokin, filed three suits in the Circuit Court of Cook County, Illinois. One suit named Edward M. Ray, individually and as executor of Barney's estate, John and Lynda Ets Hokin and certain others as defendants and sought to have Barney's will set aside. A second suit against Ray, as executor of the Barney estate, and Nikoh, sought damages for the breach of an alleged contract in connection with Edwin Hokin's sale of Nikoh stock. The third suit named Ray individually, as executor of Barney's estate, and as trustee under Loraine's will, John Hokin and Lynda Hokin as defendants and sought an accounting of the affairs of the trusts set by the will of Loraine Hokin.

Mr. Sidney Hess was retained to represent John and Lynda Ets Hokin in connection with these suits. After extensive negotiations, the various law suits were settled as reflected in court decrees of Febru-

ary 5, 1965 and March 23, 1965. Ray was replaced as trustee of the family trusts. Sidney Hess and American National Bank were appointed trustees for all trusts in which Lynda was primary beneficiary. Hess, American National Bank and William Friedman were designated trustees for all trusts in which John was the primary beneficiary. Pursuant to an "Agreement for Redemption of International Nikoh Corporation Shares," dated January 25, 1965, effective February 5, 1965, the Nikoh stock held by the estate of Barney Ets Hokin and by the International Trust for John and Lynda was redeemed for $367 per share. The interests of John and Lynda were severed, so that the International Trust for John held 60 percent of the corpus previously held by the International Trust for John and Lynda and the International Trust for Lynda held 40 percent of said corpus. Similarly, the residuary estate of Barney Ets Hokin was separated later into two portions of which 60 percent was to be held for the benefit of John and 40 percent was to be held for Lynda.

Ray died unexpectedly on March 14, 1965 and was replaced by Sidney Hess and William Friedman as administrators of the estate of Barney Ets Hokin in April 1965. At that time, the federal estate tax return had already been filed and was undergoing an audit. In June 1965, deficiencies were proposed based on adjustments to entries other than the Nikoh stock, which had been reported at $98 per share. The estate paid the deficiency and no one attempted to correct the $98 per share valuation, although this was after the redemption agreement above mentioned.

On November 15, 1965, Hess, as co-administrator of the Barney Ets Hokin estate, filed the estate's federal income tax return for the fiscal year ending on May 31, 1965. The redemption of the Nikoh stock on February 5, 1965 was reported on this return and the gain thereon computed using the $98 per share value as reported on the taxpayer's federal estate tax return as the cost basis of the stock.

The International Trust from which the remaining shares were redeemed was severed into two parts by court decree of March 23, 1965, as described above. Consequently, although the redemption took place before the severance, the gain was reported by successor trusts known as the International Trust for John and the International Trust for Lynda. The return for the International Trust for John for the year 1965, which was filed by Sidney Hess, William Friedman and the American National Bank, as trustees, used as its basis in the redeemed stock, $200 per share, the amount used to compute Loraine Ets Hokin's federal estate tax. The same $200 per share basis was used computing the gain reported by the International Trust for Lynda on the 1965 return filed by the trustees, Hess and the American National Bank.

The Probate Court approved the First and Final Account of Administrators de bonis non with Will Annexed of the estate of Barney Ets Hokin on May 29, 1967. Among the assets distributed pursuant to this accounting were interests of 60 percent and 40 percent, respectively, to the Residue Trust for John and the Residue Trust for Lynda, in the "claims against the Internal Revenue Service for refund of Federal Estate Tax and Federal Income Taxes."

On June 26, 1967, claims were filed by the trustees of the Residue Trust for John and the Residue Trust for Lynda seeking refund of federal estate taxes paid by the estate of Barney Ets Hokin on several grounds, none of which involved the value of the Nikoh stock redeemed. These claims were partially allowed and the trustees accepted the resulting overassessment in August 1968. No action was taken to increase the value of the Nikoh stock on the estate tax return.

On November 12, 1968, claims for refund were filed by (1) Sidney Hess, William Friedman, and the American National Bank, as trustees of the International Trust for John for the year 1965; and (2) Sidney Hess and the American National Bank as trustees of the International Trust for Lynda for the year 1965. These claims were

based on the allegation that the gain reported on the redemption of Nikoh stock from the International Trust, created by the will of Loraine Ets Hokin, was erroneous because the basis of the stock was at least equal to the redemption price of $367 per share rather than the $200 per share used in computing the federal estate tax. By this time, the statute of limitations had run with respect to the estate tax assessment.

On the same day, claims were filed by (1) Sidney Hess, William Friedman and the American National Bank as trustees of the Residue Trust for John and (2) Sidney Hess and the American National Bank as trustees of the Residue Trust for Lynda. These claims were based on the allegation that the gain reported on the redemption of Nikoh stock from the estate of Barney Ets Hokin was erroneous because the basis of the stock was at least equal to the redemption price of $367 per share rather than $98 per share as reported on the taxpayer's federal estate tax return.

On December 31, 1970, the International Trust for John and the International Trust for Lynda terminated in accordance with the terms of Loraine Ets Hokin's will and the assets of these trusts were thereafter distributed to John and Lynda Ets Hokin respectively. The claims for refund filed by the trustees were among the assets distributed.

On April 16, 1973, waivers of statutory notice of claim disallowances were filed. Thereafter on December 19, 1973, plaintiff filed suit in this court.

## II

The case is before the court now on defendant's motion for leave to amend its answer to include the defense of estoppel, filed September 20, 1975, and on defendant's motion for summary judgment, filed August 18, 1975. We consider first defendant's motion for leave to amend its answer.

■ Defendant, in its motion for summary judgment, argued that plaintiffs should be estopped from arguing that the basis of the Nikoh stock in issue differed from the values used for federal estate tax purposes. However, defendant's original answer, filed March 28, 1974, did not contain the defense of estoppel, which under this court's Rule 37(b) must be affirmatively pleaded. Defendant contends that plaintiff's counsel have been on notice that defendant intended to assert the issue of estoppel since June 1974 and that therefore, plaintiffs will not be prejudiced by an amendment of the pleading at this time. Plaintiff opposes the motion alleging that defendant was "grossly delinquent" in its failure to raise the defense at an earlier date.

This court's Rule 38(h) provides that if a party does not affirmatively plead estoppel in its answer, the defense is waived. However, Rule 39(a) allows the pleadings to be amended by leave of court which "shall be freely given when justice so requires." Rule 39(b) allows for amendment of the pleadings to conform to the evidence at any time, even after trial.

■ Rule 39(a) and 39(b) should be liberally construed. The Supreme Court has stated that " * * * [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules required, be 'freely given.' * * * " *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (discussing Fed.R.Civ.P. 15(a) which is identical to our Rule 39(a)).

■ Plaintiffs contend that there has been undue delay and that they will be prejudiced by defendant's amendment at this point. Neither argument withstands close scrutiny. Mere delay is insufficient to bar amendment of the pleadings and plaintiff has not demonstrated that it has been or will be prejudiced, other than the fact that it incurred costs in discovery proceedings with respect to the value of the stock. Plaintiffs have not been precluded from presenting their case. Plaintiffs knew at

some time prior to oral argument that estoppel was an issue and were able to brief and argue the point. Justice requires that defendants be granted leave to amend, pursuant to Rule 39(a). Moreover, we could also grant defendant's motion based on Rule 39(b). As the court said in *Erickson v. United States,* 309 F.2d 760, 764, 159 Ct.Cl. 202, 210 (1962), " * * * here the course of the proceedings was such that it is just and proper to consider the pleadings amended (under our Rule [39(b)], 'Amendments To Conform to the Evidence') to state the defense of estoppel * * * ." In *Erickson,* plaintiff's counsel was aware of the defense of estoppel at trial. He did not introduce evidence to counteract this defense which he would have done had estoppel been pleaded, but he did inform the court what the evidence would have been, and for purposes of the opinion, it was taken as if proven. Thus although the defendant in *Erickson* did not affirmatively plead estoppel in its answer, the court, after trial, nevertheless considered the affirmative defense of equitable estoppel. Similarly, the evidence before the court here strongly indicates an estoppel and therefore mandates that defendant be allowed to amend its answer to conform to the evidence in accordance with Rule 39(b) to permit justice to be done. Plaintiffs admit that the value used to determine estate tax liability is different from the value they seek to use to compute the gain on the redemption of the stock. There is no dispute as to the facts relied on to raise the issue of estoppel and of course we could not find any disputed facts at this time.

■ Accordingly, defendant's motion for leave to amend its answer is granted. Although we have allowed the motion on the strength of Rules 39(a) and (b), we could have granted the motion without consideration of these rules. The defense to plaintiffs' petition is based in large part on the Internal Revenue Code and Treasury Regulations. As such it is not merely an equitable defense, such as the word "estoppel" normally denotes as stated in *Erickson, supra,* but more in the nature of a legal defense. As indicated below, it is sometimes called "quasi-estoppel." Failure to raise such an issue in the answer does not constitute waiver of the defense.

### III

We now turn to defendant's motion for summary judgment. The issue in this case is whether the estate must use the value of stock as reported on its federal estate tax as its basis in computing gain on the subsequent redemption of the stock, and, similarly, whether a testamentary trust must use the value of stock as finally determined for the purpose of the federal estate tax as its basis in computing gain on the subsequent redemption of the stock. Defendant bases its argument on theories of estoppel, quasi-estoppel, and the "duty of consistency," and posits that the estate of Barney Ets Hokin and the International Trusts created by the will of Loraine Ets Hokin should be estopped from using as the basis of the stock any value other than that used by the respective estates in computing their federal estate tax. Plaintiffs, however, urge that they should be allowed to prove that the stock in question was erroneously undervalued for estate tax purposes. Plaintiffs contend that the Nikoh stock was worth at least $367 per share as of the two dates used for valuation of the stock by the estates.

■ As a general rule, the basis of property in the hands of a person acquiring the property from a decedent is the fair market value of the property at the date of the decedent's death or at the alternate valuation date if used. 26 U.S.C. § 1014(a). This basis, as adjusted, is used if the property is later sold, exchanged, or, as in the present case, redeemed, in order to determine gain or loss. 26 U.S.C. §§ 1001, 1011. The fair market value of the property at the time of the decedent's death or at the alternate valuation date is also the amount required to be reported on the taxpayer's federal estate tax return. 26 U.S.C. §§ 2031, 2032. The identity of the two values in the congressional mind is clearly indicated by the fact that the election by the decedent's es-

tate to use the alternate valuation date binds the subsequent income tax payer. This would be often meaningless if the value figure chosen did not bind him also.

The success of an estate in getting through IRS audit a low valuation of property may turn into a Pyrrhic victory in the event of subsequent income taxation. This is a matter practitioners in the field are well aware of and it tends to minimize disputes as to the valuation of estates, where assets other than listed securities are involved, and especially with real property. It furthers the concept of self-assessment. However, a rule that the estate tax valuation must always be the basis for the subsequent income tax, might be fair, and within the congressional contemplation, but it is too simple to stand against the trends that ever operate to maximize complexity in our tax structures. Should there ever be a plain and simple rule, something is sure to happen to it. So here. We do not wish, however, to use our powers to enlarge the exceptions already extant, and further complicate the rule.

■ It is too late in the day to rely exclusively on a literal reading of the statute. Treasury Regulation 1.1014–3 provides that the value of property as of the date of decedent's death as appraised for the purpose of the federal estate tax or the alternate value as appraised for such purpose "shall be deemed to be its fair market value," and so provided at the ·date of the transactions here involved. While not statutory, Treasury Regulations do have the force and effect of law. The Internal Revenue Service explained further in Rev.Rul. 54–97, 1954–1 Cum.Bull. 113 that " * * [e]xcept where the taxpayer is estopped by his previous actions or statements, such value is not conclusive but is a presumptive value which may be rebutted by clear and convincing evidence." And finally, this court, in *Ford v. United States,* 276 F.2d 17, 149 Ct.Cl. 558 (1960), stated that a then applicable Treasury Regulation, which corresponds to Treas.Reg. 1.1014–1, was intended to make the appraised value prima facie evidence of actual value. We noted in

*Ford* that the regulation and the doctrines of estoppel should be " * * * proceeded with cautiously, and with a careful regard to the circumstances of the case." 276 F.2d at 21, 149 Ct.Cl. at 566. The court did not say that estoppel could never be applied, but only that the facts of the *Ford* case did not warrant such an application.

■ After giving "careful regard to the circumstances of the case," we hold for defendant. Courts have long recognized that a taxpayer has an equitable responsibility to report transactions which have an impact upon different taxable periods or different taxes in a consistent manner. *R. H. Stearns Co. v. United States,* 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647 (1934). The Congress recognized this duty with respect to income taxes when it enacted section 3801 of the 1939 Internal Revenue Code, now 26 U.S.C. §§ 1311–15, relating to the correction of errors when a taxpayer or the Commissioner has taken an inconsistent position in a later year after the statute of limitations had expired. This provision does not apply here, but this so-called "duty of consistency" is also an equitable consideration strongly intimated by the Code's requirement that fair market value be used to determine the basis of property in the taxation of the estate and also in the income taxation of the recipient of the property.

■ Three elements are necessary to establish that a duty of consistency exists, such that a party is estopped, or quasi-estopped, from changing its position. First, the taxpayer must have made a representation or reported an item for tax purposes in one year; second, the Commissioner must have acquiesced or relied on that fact for that year; and third, the taxpayer must desire to change the representation, previously made, in a later year after the statute of limitations on assessment bars adjustment for the initial years. *Beltzer v. United States,* 495 F.2d 211, 213 (8th Cir. 1974). The term "quasi-estoppel" is used approvingly in that case, which involves a situation much like the one here. See also other cases cited therein.

Plaintiff contends that the duty of consistency is not applicable because defendant did not rely on the valuation of the stock as set forth in the Barney and Loraine Ets Hokin estate tax returns. Plaintiff seems to argue that since defendant conducted an audit, plaintiffs' representations as to value were ignored. In the Barney estate, the Government accepted the value of the stock in question as reported in the estate tax return as a partial tax base. It relied on the estate's initial valuation and later acceptance of any change due to the audit. Plaintiffs did not seek to raise the value of the stock until after the statute of limitations had run on the estate tax assessment, thereby causing the defendant to rely, perhaps to its detriment, on the agreed valuations. With respect to the Barney estate, Mr. Hess and Mr. Friedman, who were appointed co-administrators in 1965, moreover did not correct the $98 per share value on the estate tax return after the redemption agreement at $367, nor did they seek to raise that figure when they filed a federal income tax return for the estate. In the Loraine estate tax return, the $200 figure was the Government agent's figure but the estate representatives acquiesced in it and cannot but have had some input in establishing it, if only by claiming a still lower figure initially.

Plaintiffs rely heavily on *Ford v. United States, supra,* to support their position that it should not be estopped from proving the actual value of the stock in issue. This court did not find the necessary basis for estoppel in *Ford* after examining the facts of that case. The facts of the instant case are distinguishable and the result need not be, and is not, the same as in *Ford.*

In *Ford,* the plaintiffs sold stock which they had received from their father's estate and reported the gain on their own personal income tax returns. In computing gain, they used as their basis in the stock a larger figure than that used by their father's estate for federal estate tax purposes. The court held that plaintiffs were not estopped from proving actual value as of the date of their father's death because they had not taken part in the representation made in the federal estate tax return. Thus *Ford* does not aid us in determining whether the Barney estate is estopped from proving a higher value for purposes of determining gain on the redemption of the stock. Here, there is a direct change of position by a single taxpayer, the estate of Barney Ets Hokin. Moreover, the individuals who are trustees of the Residual Trust created under the will of Barney Ets Hokin were also coadministrators of the estate. They filed claims for refund of federal estate tax on grounds other than the value of the Nikoh stock and accepted the valuation of the stock at $98 per share.

Plaintiffs assert that John and Lynda Ets Hokin are the real parties in this matter as they are the ultimate beneficiaries of the Barney estate. Presumably, plaintiffs think that this argument brings the case within the scope of *Ford.* However, we do not agree, since neither is the taxpayer here, nor filed the returns in issue, and therefore their interests are only derivative.

■ The remaining question is whether the International Trust must use the same basis in computing its gain as the estate which created it. The estate and the trust are separate legal entities; however, the mandate of 26 U.S.C. §§ 1014 and 2031, read together, does apply. The interests of the two entities being very closely related, and the same individual having acted, we think it only fair and in accord with the spirit of law, to require the trust to act in a manner consistent with the estate. *Beltzer, supra,* involved taxpayers who were not the estate which made the original representation. That court distinguishes *Ford* as involving persons who were minors when the estate tax return was filed and had nothing to do with it.

Plaintiffs strenuously maintain that summary judgment is inappropriate because there are facts in dispute, necessitating trial. We have not relied on any facts except undisputed ones, and the facts plaintiffs would like to prove would not change the result.

Accordingly, defendant's motion for leave to amend its answer is granted. Defendant's motion for summary judgment is granted. The petition is dismissed.

KUNZIG, Judge (dissenting):

In good conscience, I must dissent. This court has been treated to a lengthy oral argument of facts by plaintiffs, followed by an even more vehement discussion of confusing, conflicting and even opposite facts by defendant. Clearly, the present posture of this case calls for a trial to resolve relevant facts in two crucial areas, once and for all.

First, the majority's decision permits defendant to amend its answer some two years after the original answer was filed.[1] The amendment allows defendant to plead the defense of estoppel, quasi-estoppel or duty of consistency. The conclusion of the majority is premised upon its opinion that amendment should be granted "in the interests of justice" under Ct.Cl. Rule 39. Normally, I would agree with the court. Leave to amend should be freely granted where one party presents a valid claim or defense and the other party is not prejudiced by the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, I believe that defendant must be compelled to do justice in order to reap its benefits. In the instant case plaintiffs allege that defendant's conduct has caused them to undertake expensive discovery procedures which could have been avoided had defendant submitted a proper answer. Accordingly, I would, at least, condition defendant's leave to amend on repayment of any additional costs caused by its erroneous course of conduct. A trial to determine such amounts is necessary.

Second, the majority finds plaintiffs bound to use the estate tax values for computation of gain on subsequent stock redemptions under a "duty of consistency." The majority distinguishes *Ford v. United States,* 276 F.2d 17, 149 Ct.Cl. 558 (1960), on the basis that the plaintiffs in that case were sufficiently removed from earlier representations as to alleviate any estoppel or duty of consistency. The majority in the present action, *without the benefit of a trial on the operative facts,* finds that the plaintiffs are either identical or so closely related to those who made earlier representations as to be bound by the earlier declarations. The court would apparently give only lip service to the admonition of *Ford* that:

[A]pplication of the doctrine of estoppel and *related doctrines with an equitable flavor,* * * * be proceeded with cautiously, and with careful regard to the circumstances of the case.

Although the majority states that it has given such careful consideration to the circumstances of this case, the detailed factual disputes which highlighted oral argument have apparently been resolved in favor of the Government. This is especially crucial with regard to the International Trust in which different taxpayers are being held to the "duty of consistency" without key findings as to the closeness of their relationship or without other crucial determinations (important in *Ford*) as to actions taken by the IRS at the time of the estate tax filings. Again, I would remand the case to the trial division for resolution of relevant facts and the applicability of the *Ford* case to the present action.

I, therefore, dissent from the decision of the majority and would remand this entire matter to the trial judge for appropriate action not inconsistent with the above.

1. Even more serious is the majority's dicta to the effect that defendant need not have entered a motion to amend its answer in order to rely on the "duty of consistency" defense. The court bottoms this idea on its notion that the duty is more in the nature of a *legal defense* rather than an *equitable one.* However, the court's characterization ignores the dictates of Ct.Cl. Rule 37 and the philosophy of notice pleading. Rule 37(b) requires that affirmative defenses or matters constituting an avoidance be specifically set forth in the pleadings. The "duty of consistency" is clearly in the nature of an avoidance. As such it must be set forth affirmatively in defendant's answer, or waived under Ct.Cl. Rule 38(h). Otherwise defendant could "trap" unwary plaintiffs by failure to put them on notice that they will have to resist the "duty of continuity" avoidance.