NICHOLS, Senior Circuit Judge.
 

 Union Pacific Railroad Company and Affiliated Companies (Union Pacific) appeal the decision of the United States Claims Court, 9 Cl.Ct. 702 (1986) (Margolis, J.), denying Union Pacific recovery of statutory interest on overpayments of federal income and excess profits taxes incurred between tax years 1943 and 1945. We affirm.
 

 I
 

 Background
 

 During World War II, Union Pacific, a Utah corporation, transported war-related materials for the Federal Government. Pursuant to the Transportation Act of 1940, ch. 722, pt. II, 54 Stat. 898, 954-55 (1940), shipments transported and intended for military use were entitled to receive special rates known as “land grant” freight rates, but the true end use was often not disclosed to the carrier because of wartime secrecy. Section 322 of the Act required the government to pay transportation charges as presented by the carrier, subject to later audit procedures designed to identify the purpose of the wartime shipments and determine the amount of excess transportation charges paid to railway carriers. The General Accounting Office implemented the audit procedures.
 

 Between 1941 and 1946, Union Pacific collected $61,953,803 in excess transportation charges. The government recouped this amount, without interest, between 1942 and 1957, mainly by offsetting the overpaid amount against other tariffs that were owed to the railroad. The monies withheld in this manner were referred to by both the government and the railroads as “cutbacks.” The excess rates were reflected as income on wartime tax returns for 1941 through 1946; and for years 1942 through 1957, Union Pacific deducted the amounts refunded to the United States only in the year of repayment as required by the “claim-of-right” doctrine.
 
 North American Oil Consol. v. Burnet,
 
 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). The net result, however, did not fully offset Union Pacific’s tax liability generated by the previous years’ reporting of excess transportation charges because the wartime tax rates were so much higher. Union Pacific faced a significant tax liability for excess charges that were reported as income and later recaptured because, for tax purposes, the recoveries could not be related to the years the transportation was performed.
 

 To remedy the situation, Union Pacific applied, under authority of section 43 of the 1939 Internal Revenue Code (IRC), to the Commissioner of the Internal Revenue Service (IRS) to make adjustments to deters mine clear reflection of income for the years in question. Letters exchanged between Union Pacific and the IRS resulted in an agreement (the “1948 agreement”) which allowed adjustment of wartime income and excess profits taxes to reflect the later “cut-backs” and to eliminate them from later years’ tax deductions according
 
 *1569
 
 ly, and also required Union Pacific to restrict the amount of interest it would receive on refunds to the amount it would pay for adjusting later income upward. At the time of the agreement, Union Pacific did not object in writing to the restriction of interest. Specifically, on November 29, 1948, the IRS responded to Union Pacific’s counterproposals regarding cutback deductions:
 

 [P]ermission is granted under the authority conferred in section 43 of the Internal Revenue Code [of 1939] to allocate, on the terms and conditions hereinafter stated, repayments heretofore or hereafter made of excessive transportation charges * * * to the years in which such charges were included in taxable income.
 

 * * * * * *
 

 3. The amount of interest on refunds of income and excess profits taxes resulting from these adjustments shall be allowed only to the extent of, and limited to, the amount of interest on deficiencies resulting from these adjustments.
 

 Union Pacific accepted the Commissioner’s restrictions in a letter dated December 14, 1948. Union Pacific then proceeded to amend its returns and to reflect the proper income for each tax year in question, whether as an overpayment or as an underpayment.
 

 Section 3771(a) of the 1939 Code and section 6611 of the 1954 Code and the 1986 Code require that interest be paid on overpayment of internal revenue taxes. 26 U.S.C. § 3771(a) (1939); 26 U.S.C. § 6611 (1986). Union Pacific has received its overpayment refunds from IRS without interest except as offset by underpayment interest. A partial settlement of Union Pacific’s claims for the years 1943 and 1944 was evidenced by a Form 870-AD executed by Union Pacific and the IRS Commissioner in 1977. In 1978, the Commissioner refused to pay interest on the overpayments listed in Union Pacific’s 1943 and 1944 tax returns, in what Union Pacific complains, is a violation of § 3771(a),
 
 supra,
 
 and § 6611,
 
 supra.
 
 After unsuccessful attempts at settling the dispute, Union Pacific filed suit in the United States Claims Court on June 15, 1984, alleging tax overpayments due the railroad resulting from retroactive deduction of excess transportation charges. On cross-motions for summary judgment, the Claims Court held that the interest restriction stated in the 1948 agreement is enforceable and that the forfeiture of interest was properly applied by the Commissioner. 9 Cl.Ct. at 707. Union Pacific timely filed its appeal on July 10, 1987.
 

 II
 

 Issues
 

 The main issue at hand, two-fold in nature, regards the propriety of the interest restriction inserted in the 1948 agreement. Initially, the question is whether the agreement is valid and enforceable. If not, then, does equitable estoppel prevent Union Pacific from challenging: (1) the validity of the interest restriction in the agreement; and (2) its failure to receive interest on overpayments made on its excess profits? A minor issue we discuss in Part III C, below.
 

 III
 

 Discussion
 

 A. Validity of the Agreement
 

 Union Pacific’s case revolves around the validity and enforceability of the 1948 agreement. Initially, the government asserted the agreement’s validity and Union Pacific contested both its validity and enforceability. The government, however, has, in its candor, relieved the taxpayer of some of its burden by conceding, both in its brief here and at oral argument, that the 1948 agreement is not binding. The invalidity results from the agreement not having been signed by the proper Treasury officials, as the statute law required, I.R.C. § 3670 (1939). The government maintains the agreement may yet be enforced citing the Supreme Court case of
 
 Botany Worsted Mills v. United States,
 
 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929), which states that an informal tax settlement agreement is “not binding of itself,”
 
 id.
 
 at 289, 49 S.Ct. at 132, but “may when executed become, under some circumstances,
 
 *1570
 
 binding on the parties by estoppel[].”
 
 Id.
 
 Following the government’s concession, therefore, the crucial question now becomes whether Union Pacific is equitably estopped from recovering the claimed additional interest on overpayments of excess profits, which the Commissioner earlier denied the taxpayer. The Claims Court held that the agreement was enforceable and valid, a conclusion with which we cannot, under the circumstances, agree. We hold, therefore, that the agreement is not binding of its own force.
 

 B. Equitable Estoppel
 

 The government argues, in the alternative, that Union Pacific is estopped from challenging the validity of the interest restriction. In essence, the government argues that a suit may not be predicated on omissions induced by the party suing,
 
 Swain v. Seamens,
 
 76 U.S. (9 Wall.) 254, 274, 19 L.Ed. 554 (1870);
 
 see also R.H. Steams Co. v. United States,
 
 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647 (1934); in this case, failure to object to the interest restriction and subsequently complying with the terms of the agreement.
 

 In its brief, the government also cites to
 
 Guggenheim v. United States,
 
 111 Ct.Cl. 165, 77 F.Supp. 186 (1948),
 
 cert. denied,
 
 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949), for the proposition that the government cannot be placed in the same position it was in before the challenge of the agreement and that, therefore, Union Pacific should not now be heard to complain about its lost interest. The railroad is estopped from objecting to that which it should have objected to in 1948 or soon thereafter. As the Claims Court notes: “The plaintiff [Union Pacific] had legal advice during and after the war. The Internal Revenue Code was known by the plaintiff. The plaintiff knew the alternatives and made its choice.”
 
 Union Pacific,
 
 9 Cl.Ct. at 707. We agree with the Claims Court’s and the government’s positions regarding equitable estoppel.
 

 The lack of a signature by the proper official was a relatively minor defect which could have readily been corrected if plaintiff had given prompt notice of its insistence on having such a signature. More serious is the charge that the government, having conceded that the retroactive correction of the returns for the war years was necessary to reflect taxable income fairly, had no right to exact a waiver of statutory interest as a precondition for doing what it ought to have done gratis. We think, however, even if the government committed a serious wrong in doing as it did, equity is against taxpayer having any right to sign without protest, knowing of the wrong, and say nothing, and rely on the wrong at a much later date. The court said in
 
 Harvey Radio Labs., Inc. v. United States,
 
 126 Ct.Cl. 383, 391, 115 F.Supp. 444, 449 (1953),
 
 cert. denied,
 
 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954): “When a party with knowledge or the means of knowledge of his rights and of the material facts does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or permits the other party to deal with the subject matter under the belief that the transaction has been recognized, or abstains for a considerable length of time from impeaching it, so that the other is reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, though it be originally impeachable, becomes unimpeachable.” The law recited in
 
 Harvey Radio Labs
 
 is applicable to Union Pacific’s actions insofar as Union Pacific held the keys to knowledge of the IRC, the agreement discussed, and the alternatives available.
 
 See also Union Pacific,
 
 9 Cl.Ct. at 707.
 

 A parallel case also in the contract area is
 
 Ling-Temco-Vought, Inc. v. United States,
 
 201 Ct.Cl. 135, 475 F.2d 630 (1973) (LTV), where false representations by a ranking naval officer as to Navy requirements and its dealings with competitors led LTV to continue performance of a loss contract it could have halted, and would have, had it known the truth. But it learned the truth a little later and said nothing but continued to complete the contract. Held, despite its own misconduct, the Navy could not be obliged to reimburse LTV for its loss when it was not informed
 
 *1571
 
 of LTV’s contentions and supposed it was incurring no added liability.
 

 Here, all Union Pacific need have done was to sign under protest saying, if that was what it believed, it ought not be made to give up statutory interest to obtain an adjustment the government owed it anyway.
 

 The parties have not informed us why the Commissioner thought he should require Union Pacific to waive any interest the agreement would produce for it, beyond what was required to offset the interest that would inure to the government. We note that Union Pacific did not pay interest after enjoying for some years the use of the money overpaid it for its original transportation services. What would have been most perfectly fair to do is an inquiry the parties and the court below were wise not to pursue. The presumption is that United States Government officials have acted in good faith, unless there is almost irrefragible proof to the contrary.
 
 Sanders v. United States Postal Service,
 
 801 F.2d 1328, 1331 (Fed.Cir.1986);
 
 Knotts v. United States,
 
 128 Ct.Cl. 489, 121 F.Supp. 630 (1954).
 

 The doctrine of equitable estoppel may be applied in circumstances where “[i]t would be obviously inequitable to allow the plaintiff to renounce the agreement when the Commissioner [of IRS] cannot be placed in the same position he was when the agreement was executed.”
 
 Guggenheim,
 
 111 Ct.Cl. at 182, 77 F.Supp. at 196. In circumstances where a taxpayer and the government have agreed to resolve a tax dispute in a mutually agreeable manner, a taxpayer can be held to his bargain if certain conditions are satisfied. The bargain may be reflected in either an informal written agreement or a Form 870-AD. In the instant case, both an agreement
 
 (i.e.,
 
 the 1948 agreement) and an executed Form 870-AD exist.
 

 The Claims Court has stated rightly, we think, that in order to apply the doctrine of equitable estoppel, the following conditions must be established:
 

 (1) the execution of the Form 870-AD was the result of mutual concession or compromise; (2) there was a meeting of the minds that the claims be extinguished; and (3) that to allow the plaintiff to reopen the case would be prejudicial given the defendant’s reliance on the extinguishment thereof.
 

 Kretchmar v. United States,
 
 9 Cl.Ct. 191, 198 (1985).
 

 The question then is whether the criteria stated in
 
 Kretchmar
 
 are satisfied in the present suit. As regards the first criterion, we add that, as shown above, Union Pacific is in no position to argue its consent was not really obtained. We hold that all three criteria are met. (The parties say a lot in their briefs about
 
 Kretchmar,
 
 as will we. Though it is not authority binding on us in the conventional sense, it is the most thorough and best-reasoned discussion we have seen dealing with equitable estoppel in the federal tax case, and itself, cites ample authority for its conclusions.)
 

 Although the case cited deals more extensively with binding agreements resulting in extinguishment of claims rather than the forfeiture of overpayments interest, the general principles remain the same and are equally applicable to Union Pacific’s situation.
 
 See Kretchmar,
 
 9 Cl.Ct. at 198 and cases cited therein.
 
 See also Hess v. United States,
 
 210 Ct.Cl. 483, 486-87, 537 F.2d 457, 459 (1976) (tax),
 
 cert. denied,
 
 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977);
 
 D.D.I., Inc. v. United States,
 
 199 Ct.Cl. 380, 384, 467 F.2d 497, 500 (1972) (tax),
 
 cert. denied,
 
 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973);
 
 Pacific Far East Line, Inc. v. United States,
 
 184 Ct.Cl. 169, 194, 394 F.2d 990, 1003 (1968) (government contract);
 
 Glazer Steel Corp. v. United States,
 
 181 Ct.Cl. 1063, 1076, 388 F.2d 990, 996-97 (1967) (tax).
 
 But see Estate of German v. United States,
 
 7 Cl.Ct. 641, 646-47 (1985) (tax). Before analyzing the three criteria of
 
 Kretchmar,
 
 it is important to note that Union Pacific and the government cite to different authority as the relevant law which applies to this suit. The government asserts that
 
 Guggenheim, supra, Kretchmar, supra, McMullan v. United States,
 
 231 Ct.Cl. 378, 686 F.2d 915 (1982), and
 
 H.W. Nelson Co. v. United
 
 
 *1572
 

 States,
 
 158 Ct.Cl. 629, 308 F.2d 950 (1962), control the outcome of the instant suit. In each cited case, the doctrine of equitable estoppel required some form of the elements listed in
 
 Kretchmar, supra.
 
 Union Pacific however, requests this court consider the case of
 
 Estate of German v. United States,
 
 7 Cl.Ct. 641 (1985), as more germane to the issues presented, and as establishing that for an equitable estoppel, the government must have relied on fact representations of Union Pacific to its detriment.
 

 Estate of German,
 
 also is not a decision that “binds” us. The eminence of its author as a tax lawyer requires, however, that it also be given careful consideration. The question to be decided there was whether a trust created ostensibly
 
 inter vivos
 
 was actually effective on the transferor’s death, making the trust
 
 res
 
 part of her taxable estate. The transferor/testator had not timely reported the transfer on a gift tax return and after her death a representative of the estate had allegedly offered to acquiesce in its treatment as part of the estate. Considering whether this sufficed to make an equitable estoppel, Judge Miller refers to the absence of any affirmative misrepresentation of fact as militating against it. That is all very well for the circumstances of that case, but we think in the very different circumstances of the one before us, the failure to state a position that equity required to be stated promptly if it was not to be deemed abandoned, stands in lieu of any affirmative misrepresentation. Judge Miller actually refers to
 
 Hess v. United States,
 
 210 Ct.Cl. 483, 537 F.2d 457 (1976), which is binding on us. It supports defendant’s position there and here, that in a federal tax case the untimely first assertion of a position after the time had expired, when it would have operated adversely to the taxpayer, is the basis of an equitable estoppel.
 

 The first criterion of
 
 Kretchmar
 
 requires evidence of mutual concession or compromise. The record indicates that an extensive, much discussed agreement was worked out between the Commissioner and Union Pacific over several months in 1948. Additionally, in 1977, Union Pacific and the Commissioner executed a Form 870-AD to finalize any partial settlement either party was due. The agreement and the Form 870-AD are, on their face, results of mutual concessions and compromise. Union Pacific’s and the government’s briefs both indicate that several letters and conferences occurred, with changing and adapting of terms, resulting in the final letter of November 29, 1948, outlining the interest restrictions. Union Pacific accepted the government’s terms, without written reservations, in a letter dated December 14, 1948. No clearer example of mutual compromise or concession is necessary. Test one of the equitable estoppel doctrine is thus satisfied.
 

 Inextricably tied to mutual compromise or concession is the necessity for a meeting of the minds between the parties as to the nature of the concessions or compromises made.
 
 Kretchmar,
 
 9 Cl.Ct. at 198. Here, the correspondence between Union Pacific and the Commissioner clearly states the stances and opinions of each party. The final letter of the Commissioner, dated November 29, 1948, does indicate the points of agreement reached by the parties. Again, Union Pacific’s letter of December 14, 1948, accepting the Commissioner’s restrictions as outlined, also indicates the points of agreement. Test two, therefore, of the doctrine is also satisfied.
 

 As to test three, the Claims Court, 9 Cl.Ct. at 707, finds that “plaintiff collected nearly $16 million of cutback overpayments that the Commissioner can no longer recover.” The court then cites to
 
 Guggenheim
 
 for the proposition that the doctrine of equitable estoppel was relevant. The court held that the Commissioner was unable to be returned to the position he was in prior to the execution of the agreement. The inability of the government to recoup the $16 million cutback overpayment was, in a sense, a detrimental reliance or a changed position for the Commissioner.
 
 Id.
 
 This inability establishes the prejudice resulting to the government in adhering to the conditions of the agreement as stated in 1948. It would be inequitable to now require the
 
 *1573
 
 government to pay Union Pacific interest Union Pacific had forfeited through a bargained for compromise informal agreement. If as taxpayer now argues, it gave notice of its intent to repudiate the 1948 agreement while the Commissioner still could have reestablished the original tax assessments, we do not think he could be required to unscramble the eggs in such a fashion long after the money adjustments incident to the agreement had all been made. We are not inclined to place the government in such an uncomfortable position. Test three, therefore, of the equitable estoppel doctrine is also satisfied.
 

 C. Section 1341 and its Application
 

 As a retreat position the taxpayer also invokes I.R.C. § 1341 (1954). This appears to provide a method of dealing with distortion of taxable income resulting from downward adjustments to payments to taxpayer, made in later years, in lieu of the method employed by the Commissioner under I.R.C. § 43 (1939). Certainly the 1948 agreement did not contemplate that the adjustment there provided would be cumulative on adjustments in later income resulting from later law. The trial court points out that by its own terms, section 1341 only applies if a deduction for the later taxable year is allowable, whereas the effect of the 1948 agreement is to produce a disallowance. This appears to us a sufficient answer.
 

 IV
 

 Conclusion
 

 Upon review of the record as a whole and the case law presented, the court affirms the decision of the Claims Court on the views expressed in this opinion. We hold the 1948 agreement to be not binding in and of itself, but further hold that equitable estoppel precludes Union Pacific from now challenging the validity of the interest restriction.
 

 AFFIRMED.